**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Biswanath Halder, | : | Case No. 1:09 CV 1701 |
| Petitioner, | : | |
| vs. | : | |
| Terry Tibals, Warden, | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Respondent. | : | |

Pursuant to 72.2(b)(2) of the United State District Court Northern District of Ohio Local Civil Rules, this case was automatically referred to the undersigned Magistrate Judge for report and recommendation. Pending are the Petition for Writ of Habeas Corpus pursuant to 28 U. S. C. § 2254, Respondent's Return, Petitioner's Traverse and Respondent's Reply to Petitioner's Traverse (Docket Nos. 1, 7, 15 & 17). For the reasons that follow, the Magistrate recommends that the Petition for Writ of Habeas Corpus be denied.

## I. FACTUAL BACKGROUND

Under the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), the factual findings made by a state court in the direct appeal

are presumed to be correct in a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment in state court. *Keith v. Mitchell*, 455 F. 3d 662, 666 (6th Cir. 2006) (*citing* 28 U. S. C. § 2254 (e) (1) (2006)). A habeas court must presume the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1) (Thomson Reuters 2011). The petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U. S. C. § 2254(e)(1)(Thomson Reuters 2011).

The Ohio Eighth District Court of Appeals made the following findings of fact. Petitioner failed to rebut the correctness of these facts.

> Petitioner, a 64 year old man, was born in India and became a United States Citizen in 1980. In 1963, Petitioner obtained a bachelor's degree in electrical engineering from Calcutta University in India. He attended New York University Graduate School of Business in 1980, but dropped out because of financial challenges. From 1988 through 1992, Petitioner was found to be disabled and received social security disability insurance benefits. He was diagnosed with personality disorder, dysthymia, and depression by different physicians. He attended the University of Massachusetts from 1989 through 1994 where he studied mathematics, computer science, and economics, but did not obtain a degree. From 1995 to 1996, Petitioner attended Boston University. In 1999, he received a Masters of Business Administration from the Weatherhead School of Management at Case Western Reserve University (Case Western).
>
> Also in 1999, Petitioner began work on Worldwide Indian Network (WIN), a Business Council that would assist people of Indian descent in starting their own businesses. Sometime in 2000, Petitioner believed Shawn Miller, of Case Western, deliberately destroyed his website and deleted contact information for 50,000 addresses. In 2001, Petitioner filed a civil suit alleging that Miller maliciously and intentionally destroyed his website. In 2002, Petitioner's attorney withdrew citing inability to work cooperatively with Petitioner. Petitioner believed his opponent had bribed his attorney and that his attorney was withholding case information from him. Petitioner then represented himself. His civil suit was dismissed and the Court of Appeals dismissed his direct appeal.
>
> On May 9, 2003, Petitioner used a sledgehammer to break his way into the Peter B. Lewis building at Case Western. Video surveillance showed that Petitioner was wearing a flak jacket, an army helmet, and an athletic supporter with a cup and carrying a Tech 9 semi-automatic machine style handgun and a Berretta

nine-millimeter handgun. The video showed that Petitioner shot and killed the first person he encountered. Thereafter, Petitioner fired indiscriminately at the occupants and at the police who later arrived. He then held numerous people hostage for approximately eight hours before surrendering to the Cleveland Strategic Weapons and Tactics Team.

*State v. Halder*, 2007 WL 3286904, *1-4 (2007) (unreported).

## II. PROCEDURAL BACKGROUND

A.  **INDICTMENT, CONVICTION AND SENTENCING.**

On May 29, 2003, the Cuyahoga County Grand Jury handed down a 338-count indictment against Petitioner. The indictment included:

| | |
|---|---|
| Counts 1-4 | Aggravated murder, a violation of OHIO REV. CODE § . |
| | (a)  Four firearm specifications. |
| | (b)  Seven felony murder specifications. |
| | (c)  Ninety six mass murder specifications. |
| | (d)  Four terrorism specifications; |
| Counts 5-40 | Attempted murder, a violation of OHIO REV. CODE § 2923.03. |
| | (a)  Sixty-five firearm specifications. |
| Counts 41-54 | Aggravated burglary, a violation of OHIO REV. CODE § 2911.11 |
| | (a)  Fourteen firearm specifications. |
| Counts 55-336 | Kidnaping, a violation of OHIO REV. CODE § 2905.01 |
| | (a)  Three Hundred Twenty Two firearm specifications. |
| Count 337 | Terrorism, a violation of OHIO REV. CODE § 2909.24. |
| | (a)  One firearm specifications. |
| | (b)  Two felony murder specifications. |
| | (c)  Twenty four mass murder specifications. |
| | (d)  One terrorism specifications. |
| Count 338 | Unlawful possession of dangerous ordinance, a violation of OHIO REV. CODE § 2923.17. |

(Docket No. 7, Attachment 1, pp. 1-358 of 451).

On June 3, 2003, Petitioner pleaded not guilty at the arraignment. Petitioner's defense team challenged his competency, and the trial court ordered a competency evaluation. Competency hearings were held on February 23, 24, March 21, 22, and 23, 2005. At these hearings three witnesses–Dr. Barbara Bergman, Dr. James Eisenberg and Dr. John Fabian--testified:

> Dr. Bergman, a veteran psychologist, testified that she met with Petitioner on five separate occasions; that Petitioner suffered from a severe personality disorder and that there was no evidence that Petitioner suffered from a major mental disorder. She testified that if Petitioner could convey to her the details of the events and answer her questions, then he would be able to assist his attorneys. It was her opinion that Petitioner was capable of assisting his attorneys with his defense because he understood the nature and significance of the charges and the adversarial nature of the prosecutorial process.
>
> Dr. Eisenberg, also a veteran psychologist, testified that he, too, met with Petitioner on five separate occasions between August 2003 and May 2004. Dr. Eisenberg issued a preliminary report indicating that Petitioner was competent to stand trial; however, he subsequently changed his opinion. He opined that Petitioner had a personality disorder characterized by narcissism, paranoia, and displayed obsessive qualities and persecutory and grandiose symptoms. Such delusional-based beliefs made it almost impossible for him to have any meaningful collaborative relationship with his attorneys.
>
> Dr. Fabian, a practicing forensic psychologist since 1999, testified that he met with Petitioner on four separate occasions. He believed that Petitioner suffered from both delusional and personality disorders and that Petitioner was incapable of rationally assisting his attorneys.
>
> *State v. Halder, supra.*

On April 19, 2005, the trial court issued a decision finding that Petitioner was competent to stand trial (Docket No. 7, Attachment 1, pp. 409-428 of 451). The trial judge denied Petitioner's motion to represent himself on November 10, 2005 (Docket No. 7, Attachment 1, p. 433 of 451; 434-436 of 451). On November 28, 2005, the prosecutor filed a motion to amend indictment (Docket No. 7, Attachment 1, p. 437 of 451). On December 6, 2005, the court granted the motion to amend the indictment which renumbered the charges based on dismissal of several counts as

4

duplicative and other counts without prejudice (Docket No. 7, Attachment 1, pp. 444-445 of 451). On December 16, 2005, the jury found Petitioner guilty of three counts of aggravated murder, thirty five counts of capital murder, fourteen counts of aggravated burglary, one hundred forty-three counts of kidnaping, and one count of unlawful possession of a dangerous ordinance (Docket No. 7, Attachment 1, p. 451 of 451). On December 19, 2005, the trial judge granted Petitioner's Rule 29 motion for acquittal on count two hundred one of the indictment (Docket No. 7, Attachment 1, p. 446-451). The court also ordered the dismissal of kidnaping counts 115, 116, 171 and 172 (Docket No. 7, Attachment 1, p. 450 of 451). On January 22, 2006, the jury returned a sentencing recommendation of life in prison without possibility of parole as to Counts one, two and three (Docket No. 7, Attachment 2, p. 1 of 163). On February 17, 2006, the trial court sentenced Petitioner, *inter alia*, to life imprisonment without parole subject to certain firearm specifications to be served prior to and consecutive with the life without possibility of parole (Docket No. 7, Attachment 2, pp. 2-3 of 163).

**B.  DIRECT APPEAL**

Petitioner perfected a timely notice of appeal (Docket No. 7, Attachment 1, p. 4-5 of 163). Petitioner raised five assignments of error:

> First, the trial court erred in ruling that he was competent to stand trial.
> Second, the trial court erred in failing to grant his motion for self representation.
> Third, the trial court erred in dismissing jurors based on their views of capital punishment.
> Fourth, the state improperly adduced victim-impact evidence during the culpability determination phase of the trial.
> Fifth, the trial court improperly restricted Petitioner's ability to present evidence of diminished capacity to the jury in the culpability phase of the trial.

(Docket No. 7, Attachment 1, pp. 13 of 163).

On November 8, 2007, the Court of Appeals for the Eighth Appellate District overruled all

5

assignments of error and affirmed the judgment of the trial court (Docket No. 7, Attachment 3, pp. 1-60 of 438). On November 21, 2007, Petitioner filed a motion for reconsideration in the court of appeals (Docket No. 7, Attachment 3, p. 197 of 438). The Court of Appeals for the Eighth Appellate District denied the motion for reconsideration on December 3, 2007 (Docket No. 7, Attachment 3, p. 207 of 438).

### C. THE APPEAL TO THE OHIO SUPREME COURT

Petitioner filed a notice of appeal on January 3, 2008, in the Ohio Supreme Court (Docket No. 7, Attachment 3, p. 61 of 438). Review was requested on three grounds: (1) Petitioner should not stand trial because he had proven by preponderance of the evidence that he could not assist in his own defense; (2) Petitioner was denied his constitutionally protected right to represent himself; and (3) Petitioner was not heard on his due process right to present evidence of diminished capacity (Docket No. 7, Attachment 3, p. 65 of 438). On April 23, 2008, Chief Justice Thomas J. Moyer denied Petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question (Docket No. 7, Attachment 3, p. 153 of 438).

### D. POST CONVICTION RELIEF

On February 14, 2008, Petitioner filed an application to reopen the "direct appeal" pursuant to OHIO APP. R. 26(b), on four grounds: (1) a speedy trial violation, (2) ineffective assistance of trial counsel, (3) denial of Petitioner's right to testify on his own behalf, and (4) ineffective assistance of appellate counsel (Docket No. 7, Attachment 3, p. 154-164 of 438). The Court of Appeals for the Eighth District denied the application on July 1, 2008 (Docket No. 7, Attachment 3, p. 188-196 of 438). Petitioner filed a notice of appeal in the Ohio Supreme Court on August 14, 2008 (Docket No. 7, Attachment 3, p. 208 of 438). Petitioner asserted three propositions of law: Deprivation of (1)

his right to a speedy trial, (2) of the effective assistance of counsel and (34) the right to take the stand and testify in his own behalf (Docket No. 7, Attachment 3, p. 211 of 438). On October 15, 2008, Chief Justice Moyer dismissed the appeal as not having any substantial constitutional question (Docket No. 7, Attachment 3, p. 257 of 438).

### E.   WRIT OF HABEAS CORPUS.

On July 22, 2009, Petitioner filed a Writ of Habeas Corpus in this Court alleging two errors: that he was denied the right to represent himself and that he should not have been considered competent when he proved that he was incompetent to assist in his own defense (Docket No. 1). In the Traverse, Petitioner claimed that the state court failed to engage him in a colloquy in order to determine if his decision to represent himself was made knowingly and voluntarily. Respondent filed an Answer/Return of Writ alleging that Petitioner's claims lacked merit and Petitioner filed a Traverse and Respondent filed a Reply to Petitioner's Traverse (Docket Nos. 7, 15 & 17).

### III.   JURISDICTION.

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the grounds that he or she is in custody in violation of the constitution or laws or treaties of the United States. *Leslie v. Randle*, 296 F.3d 518, 521 (6th Cir. 2002) (*citing* 28 U.S.C. § 2254 (Thomson/West 2002)).

In the instant case, Petitioner is in custody at Mansfield Correctional Institution in Mansfield, Ohio. The restraint on his liberty is a collateral consequence of his conviction sufficient to satisfy the "in custody" prerequisite to habeas corpus review. Petitioner is seeking relief from his conviction under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. The Magistrate finds Petitioner has met the prerequisites and that this Court has jurisdiction to address the merits of

Petitioner's Writ of Habeas Corpus.

## IV. HABEAS CORPUS STANDARD OF REVIEW

Under the AEDPA, a federal court may not grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits unless (1) the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," *Thompson v. Bell,* 580 F.3d 423, 433(6th Cir. 2009) (*citing* 28 U.S.C. § 2254(d)(1), or (2) the state court's decision "was based on an unreasonable application of the facts in light of the evidence presented in the State court proceedings." *Id.* at 433-434 (*citing* 28 U. S. C. § 2254(d)(2)). A state court's decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* (*citing Williams v. Taylor,* 120 S. Ct. 1495, 1523 (2000)). An "unreasonable application" occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state court decision unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* (*citing Williams*, 1207 S. Ct. at 1522). Rather, the state court decision must be an "objectively unreasonable" application of federal law to be reversed. *Id.* (*citing Williams*, 120 S. Ct. at 1521).

## V. DISCUSSION

**A.** **THE STATUTE OF LIMITATIONS.**

Under the AEDPA, a one year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. 28 U. S. C. § 2244

(d)(1) (Thomson Reuters 2010). The limitation period shall run from the latest of:

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B)    the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Bachman v. Bagley,* 487 F.3d 979, 982 (6th Cir. 2007) (*citing* 28 U.S.C. § 2244(d)(1)).

The Magistrate finds that the applicable date is the one described in Section 2244(d)(1)(A). Petitioner did not file a petition for writ of certiorari in the United States Supreme Court. Therefore, his conviction became final ninety days after his appeal was concluded in the Ohio courts. 28 U.S.C. § 2244(d)(1)(A); SUP. CT. R. 13(1); *Lambrix v. Singletary*, 117 S. Ct. 1517 (1997); *see Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000). In this case, Petitioner's conviction became final on July 22, 2008 (Docket No. 1 p. 2 of 11). Petitioner's writ of habeas corpus was filed on July 22, 2009, the final day on which he could file before the statue of limitations expired.

**B.    ALLEGATIONS OF TRIAL COURT ERROR.**

Petitioner alleges three errors of the trial court. First, Petitioner was denied the constitutional right to represent himself. Second, the trial failed to engage him in a dialogue about his right to represent himself. Third, the trial court erred in finding Petitioner competent to stand trial since the preponderance of the evidence showed that he could not assist in his own defense.

    **1.    WAS THE ASSERTION OF THE RIGHT TO SELF REPRESENTATION UNEQUIVOCAL?**

Petitioner alleges in his Traverse that the State of Ohio courts misapplied the standard set

9

forth in *Faretta v. California,* 95 S. Ct. 2523 (1975), when it denied Petitioner's motion to represent himself.  Petitioner claims that the motion to represent himself was not a delay tactic and was timely made following professed grounds of dissatisfaction with counsel's representation.  Respondent argues that *Faretta* does not establish an unqualified right to self representation whenever it is requested.  Timing matters and in this case, the trial court did not err in denying Petitioner's untimely request to proceed *pro se.*

The Supreme Court reiterated in *Faretta v. California*, 95 S. Ct. 2525, 2527 (1975), that the Sixth and Fourteenth Amendments of the United States Constitution guarantee that every defendant has a right to counsel in criminal prosecutions.  *Fowler v. Collins*, 253 F.3d 244, 249 (6th Cir. 2001).  Conversely, the Sixth Amendment implies that every criminal defendant has a constitutional right to self-representation.  *Id.* (*citing Faretta*, 95 S. Ct. at 2534).  When a defendant chooses to assert the right of self-representation, he or she foregoes, as a factual matter, the benefits associated with representation by legal counsel.  *Id.* (*citing Faretta*, 95 S. Ct. at 2534).  These benefits are of the utmost importance in a criminal proceeding, because a person's very freedom is at stake.  *Id.*  In consideration of the gravity of such circumstance, the Supreme Court mandated that an individual who wishes to represent himself or herself must waive the right to counsel "knowingly and intelligently" on the record.  *Id.*  The right to self representation must be asserted in a clear and unambiguous manner.  *Id.*

A review of the transcript from the November 9, 2009, hearing shows that upon Petitioner's assertion of self representation, the trial court did not provide a scripted recital of the rights to self representation or provide a detailed colloquy of the various factors relevant to the loss of rights relevant to the decision:

| | |
|---|---|
| The Defendant: | As to my motion to disqualify counsel, I mean, you are done with it? |
| The Court: | I just ruled on it.  Yes, sir. |
| The Defendant: | In this case from now onward, I want to proceed pro se. |
| The Court: | You want to represent yourself pro se? |
| The Defendant: | Yes. |
| The Court: | Would you like to say anything about that sir? |
| The Defendant: | Anything about what? |
| The Court: | Your reasons.  You are making a motion of the court, an oral motion of the court to represent yourself? |
| The Defendant: | Yes.  I made myself very clear that my attorneys do not know the background of the case, have done no discovery whatsoever.  They have not contacted a single witness, despite the fact that I know numerous people around the world.  And they have not done anything.  Therefore I will be much better off having pro se than having these lawyers. . . . . . |
| The Court: | Mr. Halder, I am not going to rule on this right now because I would like to look at two cases before I make my decision on this.  Because it is a capital case, I want to look at a couple of cases.  So we are going to continue.  During the break I will get a couple of the cases.  All right? |
| The Defendant: | One case.  *Faretta versus California.*. . . . |

(Docket No. 7, Attachment 5, pp. 278-279 of 882).

From this dialogue, the Magistrate finds that Petitioner's election to proceed without the defense team and to represent himself was an "informed" decision.  He had apparently conducted research on the question as he directed the court to the standards for considering a motion for self representation established in *Farretta*.  A reasonable person could conclude that Petitioner executed a valid waiver of his right to counsel and that he knew, in part, the dynamics of self representation.

11

### 2. WAS THE REQUEST TO PROCEED PRO SE TIMELY MADE?

Timeliness of a request for *pro se* representation is an essential factor in whether the court grants such a request. *United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1994) (*citing Faretta*, 95 S. Ct. at 2527). The courts will then balance any such assertion against considerations of judicial delay. *Id.* at 295-296 (*see Robards v. Rees*, 789 F.2d 379, 383 (6th Cir.1986)). In *Robards*, the court upheld the district court's decision denying the defendant's motion to proceed pro se when the motion was not made until the day of trial and after the clerk had called the roll of jurors. *Id*. Recognizing the constitutional proportions of the right to self-representation, the court was cognizant of the impermissible delay that would result from granting the motion. *Id*. The Sixth Circuit Court determined that, because the defendant's motion was not timely, the trial court did not abuse its discretion in denying the request. *Id*. (*citing Robards, supra*) (*see also United States v. Brown*, 744 F.2d 905, 908 (2nd Cir. 1984) (right of self-representation is only unqualified if exercised before trial commences), *cert. denied,* 105 S. Ct. 599 (1984)). As with the requirement that the right of self-representation be asserted unequivocally, a defendant's obligation to assert the right in a timely manner runs counter to the notion of recognizing a duty on district courts to notify defendants of their right to self-representation. *Id.*

But compare this district court's decision in *Moore v. Haviland*, 476 F. Supp. 2d 768, 771 (N. D. Ohio 2007), in which petitioner expressed frustration because he was unable to speak during the third and fourth days of trial. During a break, the defendant submitted a written request to the judge seeking, at least, a chance to cross-examine witnesses and make the closing argument. *Id.* at 771.

There is no bright line test for what is a timely request for self representation. Here, the trial judge was disinclined to grant Petitioner's request made five days before the trial. The trial court

considered such claim waived as Petitioner had utilized the second defense team since May 20, 2005 and there had been no complaints about their representation until the hearing to disqualify the second team. After a lengthy hearing on the motion to disqualify and research on the issue, the court reasonably concluded that since Petitioner had not previously registered a complaint with the court about representation by the second defense team, the request was a stratagem for delay. She noted that there had been nineteen continuances in the case and no earlier motions seeking leave to proceed pro se (Docket No. 7, Attachment 5, p. 256-282 of 882). The Magistrate is persuaded that given these circumstances, the trial court did not abuse her discretion when she determined that Petitioner's request was initiated in an untimely manner.

        **3.**     **WAS THE REQUEST TO PROCEED MADE VOLUNTARILY AND KNOWINGLY?**

Petitioner alleges in his Traverse that he was not given an adequate colloquy to proceed *pro se* in the case and therefore was not fully informed of the "dangers and disadvantages of self-representation" (Docket No. 15, p. 7 of 12)

When an accused manages his or her own defense, he or she relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. *Faretta*, *supra,* 95 S. Ct. at 2541. For this reason, in order to represent herself or himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits. *Id.* (*citing Johnson v. Zerbst*, 58 S. Ct. 1019, 1023 (1938) *cf. Von Moltke v. Gillies*, 68 S. Ct. 316, 323 (plurality opinion of Black, J.)). The defendant should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that defendant knows what he or she is doing and the choice is made with eyes open. *Id.* (*citing Adams v. United States ex rel. McCann*, 63 S. Ct. 236, 242 (1942)).

In the underlying state court case, the trial judge's inquiry was limited to why Petitioner

13

requested a waiver. The trial judge reminded Petitioner that he lacked lawyering skills and that by his own admission, he was intimidated by the prosecutor and he lacked access to the media that was needed to successfully complete discovery (Docket No. 7, Exhibit 1, pp. 433-436 of 451). The trial judge reasonably concluded that Petitioner's oral motion of self representation was knowingly and voluntarily made for the sole purpose of delaying the start of the trial.

    **4.    FINDING OF COMPETENCY TO STAND TRIAL**.

Petitioner does not argue that a rational trier of fact could not have found the elements of the crimes beyond a reasonable doubt. Instead, he suggests that this Court should reassess the credibility of Drs. Bergman, Eisenberg and Fabian, and reweigh the evidence adduced by each. Upon review, the Petitioner contends that the Court can reach only one conclusion: he was incompetent to assist in his own defense. This argument is incongruous with Plaintiff's assertion that he could represent himself at trial; nevertheless, the Magistrate construes this argument as a claim that the finding of the trial judge that Petitioner was competent to stand trial is against the manifest weight of the evidence.

A claim pertaining to the weight of the evidence is not a federal constitutional claim. *Parker v. Lazaroff*, 2009 WL 2167920, *8 (N. D. Ohio 2009). Under Ohio law, "weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. [ ... ]'" *Id.* When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* (*citing State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, 546-47 (Ohio 1997) (citations omitted; emphasis in original)). A federal habeas court may not "reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court"

14

because, in habeas proceedings, "[i]t is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Id.* (*citing Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003) (citations omitted)).

Petitioner's claim that the trial judge lost her way and arrived at a decision contrary to the evidence, is not cognizable in a habeas case. The Magistrate recommends that Court dismiss this claim and defer to the trial judge's decision that Petitioner was competent to stand trial.

## VI. CONCLUSION

For these reasons, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus and terminate the referral to the undersigned Magistrate Judge.


/s/Vernelis K. Armstrong
United States Magistrate Judge


Date: November 15, 2011


## VII. NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed. Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof. Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure. The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. Any party

may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.