UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BISWANATH HALDER, | ) | CASE NO.  1:09CV1701 |
| | ) | |
| | ) | |
| | ) | JUDGE SARA LIOI |
| PETITIONER, | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| TERRY TIBALS, Warden, | ) | |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |

On July 22, 2009, Petitioner Biswanath Halder filed with this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) The petition was referred to United States Magistrate Judge Vernelis K. Armstrong for the preparation of a Report and Recommendation. The report recommends that this Court dismiss petitioner's application for habeas relief. (Doc. No. 21.) Petitioner has filed objections to this recommendation. (Doc. No. 22.).

*Background*

Because Halder objected only to the portion of the Magistrate Judge's report addressing the state courts' rulings relating to his request to represent himself at trial and his competency to stand trial, the remainder of the report—including its account of the factual and procedural history of the case—is hereby accepted as written. Thus, the Court will only provide a brief review of the facts, as found by the state appellate court, sufficient to provide context for Halder's objections.

The charges against petitioner stem from a May 9, 2003 shooting rampage at the Case Western Reserve University School of Management in Cleveland, Ohio. According to the facts determined by the state appellate court, petitioner entered the Peter B. Lewis building, on the CWRU campus, shooting and killing the first individual he encountered, and taking several other individuals hostage before finally surrendering to police. Following his arrest, petitioner was charged, in a 338 count indictment, with aggravated murder, felony murder, mass murder, attempted murder, kidnapping, aggravated burglary, terrorism, and unlawful possession of a dangerous ordnance. The aggravated murder, aggravated burglary, terrorism, and kidnapping counts included firearm specifications.

The trial court conducted multiple competency hearings on February 23, 24 and March 21, 22, and 23, 2005. At these hearings, three experts in the mental health field—Dr. Barbara Bergman, Dr. James Eisenberg and Dr. John Fabian—testified. Dr. Bergman met with petitioner on five separate occasions lasting approximately 14 hours, including one meeting a mere two weeks before she was to testify. She opined that petitioner suffered from a severe personality disorder, but found no evidence that he suffered from a major mental disorder, which led her to conclude that he was capable of assisting with his defense. In reaching this conclusion, she recalled that petitioner was capable of discussing in detail the events leading up to the shooting, as well as the shooting, itself.

Dr. Eisenberg also met with petitioner five times, and his encounters with petitioner lasted approximately 11 hours. In his preliminary report, he also diagnosed

2

petitioner with a personality disorder, and concluded that petitioner was competent to stand trial. He testified, however, that after subsequent meetings with petitioner, he changed his diagnosis to include persecutory and grandiose symptoms, and concluded that petitioner's delusional-based conspiracy beliefs made it nearly impossible for him to meaningfully assist his counsel with his defense.

Dr. Fabian also testified that he believed that petitioner was suffering from both delusional and personality disorders, and that he was incapable of rationally aiding his attorneys. Like Dr. Eisenberg, Dr. Fabian concluded that petitioner was incompetent to stand trial. On two separate occasions, however, based upon the testimony of another expert witness (Dr. Bergman), the trial court ruled that petitioner was competent to stand trial.

On November 9, 2005, at a hearing to disqualify his second set of appointed attorneys and have a third set appointed, and five days before the trial was set to begin, petitioner responded to the trial court's denial of his motion to disqualify counsel, "In this case from now onward, I want to proceed *pro se*."[1] Treating Halder's comment as a request to represent himself, the trial court questioned petitioner regarding this request, and ultimately took a recess for the purpose of reviewing case law relevant

---

[1] The Eight District Court of Appeals found that:

> Prior to this request, Halder had made various motions from September 2003 to November 9, 2005; he moved to disqualify and to replace his lawyers, but never to proceed pro se. Following the [initial] competency ruling, the first set of lawyers withdrew and the trial court appointed new counsel. On September 1, 2005, Halder moved to disqualify the second set of lawyers.

*State v. Halder*, No. 87874, 2007 Ohio App. LEXIS 5258, at ¶ 43 (Ohio Ct. App. Eighth Dist. Nov. 8, 2007).

3

to the right to self-representation. The colloquy, set out in detail in both the appellate court's decision and the Magistrate's report, did not contain a discussion regarding the risks associated with proceeding to trial *pro se*, but, instead, focused on petitioner's reason for making the request.[2] The following day (November 10, 2005), the trial court denied petitioner's request, finding that it was untimely and that it was made for the purpose of delay.

  Petitioner proceeded to trial, represented by counsel, on 202 of the original counts in the indictment. On December 14, 2005, the jury returned guilty verdicts against petitioner on the charges of aggravated murder, with a capital specification, as well as aggravated burglary, kidnapping, and unlawful possession of a dangerous ordnance. At the conclusion of the subsequent penalty phase, the jury returned a sentencing recommendation of life without the possibility of parole. On February 17, 2006, the trial court sentenced Halder to life imprisonment without parole.

  Petitioner appealed his conviction to the intermediate Ohio appellate court, raising numerous assignments of error, including the denial of the right to self-representation and error in the determination of competency. The state appellate court affirmed petitioner's conviction and sentence, finding the assignments of error to be without merit. Relevant to the present petition is the appellate court's determination that

---

[2] In response to the trial court's inquiry, petitioner testified that: "I made myself very clear that my attorneys do not know the background of the case, have done no discovery whatsoever. They have not contacted a single witness, despite the fact that I know numerous people around the world. And they have not done anything. Therefore, I will be much better off having [sic] pro se than having these lawyers." *Halder*, 2007 Ohio App. LEXIS 5258, at ¶ 46.

the trial court did not violate petitioner's right to self-representation, and did not err in finding petitioner competent to stand trial.

Halder now petitions this Court for a writ of habeas corpus to remedy two alleged constitutional violations. (Doc. No. 1.) Specifically, petitioner alleges that: (1) the trial court erred in depriving him of his Sixth Amendment right to represent himself; and (2) the trial court erred in finding him competent when he had proven by a preponderance of the evidence that he was not capable of assisting in his own defense. (*Id.* at 5-6.).

*Standard of Review*

Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Court provides, "[t]he judge must determine *de novo* any proposed finding or recommendation to which objection is made. The judge may accept, reject, or modify any proposed finding or recommendation."

With respect to challenges to the determinations made by the state courts in petitioner's case, this Court has a very limited scope of review. In § 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Congress enacted a rebuttable presumption that a federal court may not grant habeas relief from a state court conviction if the last state court adjudicated "on the merits" the same federal law question that is presented to the federal court. Congress further created two exceptions to that bar. Specifically, a federal court may grant habeas relief where the state court adjudication is either "contrary to" or "involved an unreasonable application of" settled federal law, as decided by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Habeas relief is also available where the adjudication of the claim "resulted in a decision that was based

5

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).

A state court's legal decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Moreover, a state court's legal determination will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

"A federal court, however, may not find a state adjudication to be unreasonable 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable.' " *King v. Bobby*, 433 F.3d 483, 489-90 (6th Cir. 2006) (quoting *Williams*, 529 F.3d at 411). In making this inquiry, a federal court must "presume that a factual determination by a state court is correct unless convincing contrary evidence exists." *Id.* (citations omitted). As to the second prong of § 2254(d), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011); *see* § 2254(d)(2).

The Court has reviewed the report *de novo*, as well as the briefs and supporting material submitted by the parties, and the objections to the report raised by petitioner. For the reasons set forth below, the Court will adopt the Magistrate Judge's report in part and dismiss the petition.

*Law and Analysis*

    A.    **The Right to Self-Representation**

With regard to petitioner's first claim for relief, the Magistrate Judge advised a finding that petitioner's request to proceed without counsel was an "informed" decision. In reaching this conclusion, the Magistrate Judge noted that petitioner referenced the leading case on the right to self-representation in criminal proceedings: *Faretta v. California*, 422 U.S. 806 (1975). Petitioner having apparently conducted research on the question of self-representation, the Magistrate Judge reasoned that "[a] reasonable person could conclude that petitioner executed a valid waiver of his right to counsel and that he knew, in part, the dynamics of self representation." (Report at 11.) Ultimately, however, the Magistrate Judge recommended that the first assignment of error be rejected because the trial court reasonably denied the request as equivocal and untimely and "knowingly and voluntarily made for the sole purpose of delaying the start of the trial." (*Id.* at 14.).

A criminal defendant has a Sixth Amendment right to be represented by counsel, and, if he chooses, to forego representation by counsel and present his own defense without the assistance of counsel. *Faretta,* 422 U.S. at 814. These rights are correlative, and "[b]y electing to exercise his constitutional right to present his own

defense, a defendant necessarily waives his constitutional right to be represented by counsel." *United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2004) (citing *United States v. Mosely*, 810 F.2d 93, 97 (6th Cir. 1987)). "For the accused to represent himself, however, he must 'knowingly and intelligently' forego the 'traditional benefits associated with the right to counsel.' " *United States v. Edelmann*, 458 F.3d 791, 808 (8th Cir. 2006) (quoting *Faretta*, 422 U.S. at 835). Mere expressions of dissatisfaction with counsel will not be interpreted as a request for self-representation but will be seen as an appeal to the trial court's discretion to substitute counsel. *United States v. Martin*, 25 F.3d 293, 296 (6th Cir. 1994). As such, a request to self-represent must be unequivocally made. *Id.* at 295.

The right to self-representation, however, has limits. *Martinez v. Court of Appeals of Cal.*, 528 U.S. 152, 161 (2000). In particular, the right to represent oneself must be made timely. *Id.* at 162; *United States v. Mackovich*, 209 F.3d 1227, 1236 (10th Cir. 2000); *Martin*, 25 F.3d at 295-96. In recognizing Faretta's right to serve as his own counsel, the Supreme Court noted that he had requested self-representation "weeks before the trial . . . ." *Faretta*, 422 U.S. at 835; *see Martin*, 25 F.3d at 295-96 (citing *Robards v. Rees*, 789 F.2d 379, 383 (6th Cir. 1886) ("Even where the right to self-representation is clearly invoked, it must be done so in a timely manner, and courts will balance any such assertion against considerations of judicial delay.")).

The requirement that any such request be made in a timely fashion serves both to ensure the swift administration of justice, and to guard against the strategic use of such requests to frustrate a trial court's efforts to bring cases to trial. "The right [to self-

8

representation] does not exist [] to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process." *United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir. 2000) (internal citations omitted). Trial courts must, therefore, be allowed "to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel." *Id.* (holding that the district court was justified, when confronted with the defendant's "vacillation between his request for substitute counsel and his request for self-representation," in determining that the defendant should proceeded with appointed counsel).

After acknowledging the Sixth Amendment right to self-representation, the state appellate court determined that the trial judge made a sufficient inquiry into petitioner's request to release his counsel and represent himself, noting that the trial judge had heard from petitioner, his lawyers, and the state. *State v. Halder*, 2007 Ohio App. LEXIS 6258, at ¶¶ 53-4 (Ohio Ct. App. Eighth Dist. Nov. 8, 2007). The appellate court further found that the request was equivocal, noting that it had come two and one half years after the indictment had been issued, and immediately after the trial court had denied petitioner's request to discharge his second set of attorneys and appoint a third lawyer. *Id.* at ¶¶ 54-55. The appellate court also concluded that the record supported the trial court's factual determination that the request, made five days before trial was to commence, was made for purpose of delay. *Id.* at ¶ 57.

The report urges a finding that the factual determinations made by the state trial and appellate courts as to equivocation and timeliness of petitioner's request do

not represent an unreasonable application of clearly established law. Petitioner takes issue with this recommendation, arguing that the "Magistrate Judge has relied heavily on the fact that Mr. Halder had made no prior complaints regarding his second defense team, while giving little weight to the fact that Mr. Halder made an unequivocal request to proceed pro se *five days before* his trial was set to commence and just after his discontentment with his defense team arose." (Doc. No. 22, Petitioner's Objections at 4, emphasis in original.).

"Although a self-representation request is typically timely if made prior to the selection and swearing of the jury, th[e Sixth Circuit] has held that such a request i[s] not timely 'when the prosecution makes an affirmative showing that the defendant's request for self-representation is merely a tactic to secure a delay in the proceeding.' " *Lewis v. Robinson,* 67 Fed. App'x 914, 919 (6th Cir. 2003) (quoting *Robards*, 789 F.2d at 383)); *see Seaton v. Jabe*, 1993 U.S. App. LEXIS 336, at *11 (6th Cir. Jan. 5, 1993) (same). In *Robards*, the Sixth Circuit found that the defendant's request for self-representation, made on the day of trial and after the clerk had called the roll of jurors, was untimely, noting that the defendant had not previously "expressed any displeasure" with his counsel, and that the granting of the request would have "impermissibly delayed the commencement of the trial." *Robards*, 789 F.2d at 383-84; *see Lewis*, 67 Fed. App'x at 920 (request to self-represent on the day of trial was not a good faith assertion of his *Faretta* right, and amounted to "a last-ditch effort to delay the proceedings").

In the present case, petitioner made his request to self-represent five days before trial. Given the fact that this was a capital case with hundreds of charges, any

10

request to permit petitioner to develop his own defense would inevitably have lead to a delay in the proceedings, as petitioner would have required additional time in which to prepare a defense to the very serious charges against him.[3] Likewise, the Court cannot say that the state courts acted objectively unreasonable in relying upon the fact that in two-and-one half years, petitioner had never expressed a desire to proceed *pro se*, and only did so after the trial court rejected his latest request to disqualify appointed counsel and appoint new counsel, in concluding that the request was untimely and offered merely as a stratagem for delay.[4] *See e.g., United States v. Edelmann,* 458 F.3d 791 (8th Cir. 2006) (request to self-represent made 4 days before trial was properly denied as a delay tactic); *United States v. Smith*, 413 F.3d 1253, 1279 (10th Cir. 2005) (request made 6 days before trial was untimely); *United States v. Mackovic*, 209 F.3d 1227, 1237 (10th Cir. 2000) (request made 6 to 10 days before armed robbery trial was made for purposes of delay.).

The Court also finds that the state appellate court's determination that petitioner's request to self-represent was equivocal was neither contrary to nor an

---

[3] Petitioner cites *Moore v. Haviland*, 476 F. Supp. 2d 768 (N.D. Ohio 2007) (request to self-represent, made during the trial, was timely), *aff'd, Moore v. Haviland*, 531 F.3d 393 (6th Cir. 2008). He argues that, like the defendant in *Moore*, he raised his desire to self-represent in a timely fashion after the need to do so became clear. *Moore* is factually distinguishable because, there, the state trial court did not deny the request to self-represent on the ground of timeliness, the petitioner asserted his desire to proceed *pro se* forcefully and continuously, the request did not come on the heels of a motion for the appointment of new counsel, and there is no evidence that the petitioner had sought other continuances.

[4] Petitioner also takes issue with the fact that the Magistrate Judge relied, in part, on the fact that petitioner had previously sought and obtained several continuances before seeking to self-represent. Courts, however, have properly considered such past conduct in determining whether the request to self-represent is merely an "attempt to delay the trial and abuses the judicial process." *Mackovich*, 209 F.3d at 1237 (relying on the fact that the defendant had sought and received three prior trial continuances); *see, e.g., Edelmann*, 458 F.3d at 809 (district court properly relied on fact that there had been several previous continuances in the case to find that the purpose of the request to self-represent was to delay the start of trial).

unreasonable application of clearly established federal law, nor rested upon an unreasonable determination of the facts. Petitioner's request came immediately after the trial court denied petitioner's request for the appointment of new counsel. While the trial court did not conduct a full *Faretta* hearing, the trial judge did inquire as to the reasons for the request, and the petitioner indicated that his request was born out of his general dissatisfaction with his counsel's representation and his belief that he would be "much better off having [sic] pro se than having these lawyers." Given the context in which the request was made, and the fact that numerous previous requests to have new counsel appointed had been made without a request to proceed *pro se*, it was not unreasonable for the appellate court to conclude that petitioner did not unequivocally assert his right to self-represent. *See, e.g., United States v. Jackson*, 05-4170, 304 Fed. App'x 424, 426 (6th Cir. 2008) (distinguishing *Moore*, and finding equivocation where the defendant's "comment concerning *pro se* representation was essentially an expression of dissatisfaction with his then attorney and not an 'unequivocal demand' sufficient to require a *Faretta* hearing or establish the right to self-representation . . ."); *Robards*, 789 F.2d at (the defendant did not "exhibit[] a genuine inclination to conduct his own defense" where the defendant's request to "just take it by myself" was tied to his displeasure with his counsel's representation).

In light of its rulings as to timeliness and equivocation, the Court finds that it need not adopt the Magistrate Judge's determination that petitioner's request was made voluntarily and knowingly. Because the decision to proceed *pro se* necessarily implies the waiver of the Sixth Amendment right to be represented by counsel, *United States v.*

12

*Cromer*, 389 F.3d 662, 680 (6th Cir. 2004), a trial court should advise the defendant of the "dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). The inquiry envisioned in *Faretta,* however, is "only required where a criminal defendant has clearly, unequivocally, and timely asserted his right to proceed *pro se*." *Moore v. Haviland*, 476 F. Supp. 2d 768. 787 (N.D. Ohio 2006) (citing *Cromer,* 389 F.3d at 682-83), *aff'd, Moore v. Haviland*, 531 F.3d 393 (6th Cir. 2008); *Jackson*, 304 Fed. App'x at 428. . Finding the state courts' determinations on the issues of equivocation and timeliness to be neither contrary to nor an unreasonable application of federal law, nor the result of an unreasonable determination of the facts before these courts, the Court need not determine whether petitioner fully appreciated the perils of proceeding *pro se*.[5]

**B.**     **Competency at Trial**

In his second objection, petitioner challenges the Magistrate Judge's recommendation that this Court defer to the trial judge's decision that petitioner was competent to stand trial. Petitioner complains that the Magistrate Judge misconstrued his "competency-to-stand-trial issue" as a challenge to the weight of the evidence offered at the competency hearings. He posits that the state court of appeals misapplied federal law, and insists that "there was no reliable, credible evidence that Mr. Halder was capable of rationally assisting in his own defense . . . ." (Doc. No. 22 at 9.) The Court rejects both

---

[5] The Court also questions the Magistrate Judge's conclusion that the fact that petitioner was aware of the *Faretta* decision demonstrated that his waiver was voluntary and knowing. That he was familiar with a Supreme Court decision that identified the need to apprise a defendant of the risks of self-representation does not necessarily mean that he understood the contours of those risks.

arguments.

A defendant's competency to stand trial depends on whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *see Mackey v. Dutton*, 217 F.3d 399, 410 (6th Cir. 2000). The conviction of a legally incompetent defendant, or the failure of a trial court to provide an adequate competency determination, is a violation of the defendant's due process right to a fair trial. *See Drope v. Missouri*, 420 U.S. 162, 178-83 (1975) (trial court's failure to make sufficient inquiry into defendant's competence and give adequate weight to defendant's suicide attempt and other irrational behavior violated due process); *Mackay*, 217 F.3d at 411; *see also Pate v. Robinson*, 383 U.S. 375, 385-86 (1966) (trial court's failure to conduct competency hearing in light of defendant's "pronounced irrational behavior" violated due process).

Applying the test announced in Supreme Court's decision in *Dusky,* the state appellate court ruled that there was competent, credible evidence to support the trial court's determination that petitioner had the present ability to consult with counsel with a reasonable degree of rational understanding.[6] *Halder*, 2007 Ohio App. LEXIS 5258, at ¶

---

[6] The record before the Court indicates, and petitioner does not argue otherwise in his objections, that the first part of the *Dusky* standard—a rational and factual understanding of the proceedings—was not in dispute. At the competency hearing, defense counsel specifically indicated that the "question we have, you well know, is whether or not Mr. Halder can assist in his defense." (Doc. No. 7-4 at 49.) In fact, defense counsel stipulated that "the first prong [of the competency standard] is not an issue." (Doc. No. 7-5 at 983.) Nonetheless, the state appellate court noted that Dr. Bergman testified that petitioner was capable of understanding the nature of the proceedings and the significance of the charges against him. (Doc. No. 7-4 at 479.).

40. The appellate court observed that Dr. Bergman, who opined that petitioner was competent to stand trial, testified that petitioner was able to provide detailed answers to questions that were pertinent to his present ability to assist in his defense, including questions relating to the events leading up to the shooting, and the shooting, itself. The appellate court also noted that Dr. Fabian, though unconvinced of petitioner's competency, also acknowledged that petitioner was able to provide detailed answers to the questions he posed. *Id.* at ¶¶ 34-35 While acknowledging that Dr. Fabian and Dr. Eisenberg both concluded that petitioner was not competent, the appellate court underscored the fact that Dr. Eisenberg had not seen petitioner for more than a year prior to taking the stand at the competency hearing, and that he had changed his opinion as to competency without personally reevaluating petitioner. *Id.* at ¶ 33.

A defendant's competency is an issue of fact, to which deference must be paid. *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006) (citing *Thompson v. Keohane*, 516 U.S. 99, 111 (1995)). Since a defendant's competency is a question of fact, a federal habeas review is limited to determining whether the state court's decision "involved an unreasonable application of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see, generally, United States v. Morrison*, 153 F.3d 34, 46 (2d Cir. 1998) (internal quotations and citations omitted) ("Where the record on competency may plausibly be read to indicate the defendant may not have been competent, we still defer to the judgment of the [trial] court, which has the benefit of examining [the defendant] and hearing from the fact and expert witnesses in person."). An applicant has the burden of rebutting the presumption of correctness of a state court's

factual findings by clear and convincing evidence. *See* § 2254(e)(1); *Adams v. Hoeberlin,* No. 08-5230, 404 Fed. App'x 11, 13 (6th Cir. 2010).

The state trial court's determination was made after the trial judge had ordered the preparation of expert reports and conducted numerous hearings, where she entertained testimony from mental health experts. While petitioner claims that there was no reliable, credible evidence that he was capable of assisting in his defense, Drs. Bergman and Fabian both testified that petitioner was able to recount the details of the case. According to Dr. Bergman, this was evidence that petitioner was capable of consulting with his attorneys with "a reasonable degree of rational understanding." *Halder*, 2007 Ohio App. LEXIS 5258, at ¶ 36. Further, while the testifying experts disagreed on the ultimate issue of competency, the Court cannot find that the trial court's determination that Dr. Bergman's opinion was more credible is not entitled to deference. *See United States v. Villegas*, 899 F.2d 1324, 1341 (2d Cir. 1990) (stating that a trial court's clear choice as between two permissible views on the evidence of competency "cannot be deemed clearly erroneous"); *see also Mackay*, 217 F.3d at 414 (certain expert reports that were suggestive of incompetency were insufficient to overturn conviction on habeas petition where the trial court's determination of competency was fairly supported by the record); *see, generally, General Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997) (stating that deference to a trial court's assessment of expert testimony is "the hallmark of abuse of discretion review").

While petitioner seems to acknowledge that the trial court was within its authority to choose from among conflicting expert opinions on the issue of competency,

16

he suggests that all three experts "agreed that Mr. Halder's mental health issues made him approach his case irrationally." (Objections at 9.) Petitioner's view of the evidence before the trial court is not entirely accurate. Dr. Bergman, for example, testified that petitioner suffered from a personality disorder that included prominent paranoid features; explaining that a person who suffers from such a condition "feels like he got a raw deal in life." (Doc. No. 7-4 at 445-6.) However, she specifically distinguished the existence of a paranoid personality disorder from a delusional mental illness.[7] She also testified that, based upon her conversations with defense counsel, it was her understanding that petitioner had not cooperated with counsel. Notwithstanding this observation and her finding of a personality disorder, Dr. Bergman concluded that petitioner retained the ability to work with counsel, citing her own discussions with petitioner regarding the details relevant to his case.[8] (Doc. No. 7-4 at 516.) The trial court chose to credit this testimony, as well as Dr. Bergman's assessment of petitioner's present ability to rationally assist in his defense, and the appellate court found that the determination of

---

[7] A case relied upon by petitioner in his traverse illustrates the difference between a personality disorder with paranoid symptoms and a delusional psychosis. In *United States v. Blohm*, 579 F. Supp. 495 (S.D.N.Y 1983), the district court found that the defendant was not competent to stand trial, based upon testimony from an expert mental health professional who explained that the defendant's belief that he was the victim of a conspiracy involving then-President Nixon was " 'delusional' – a false, 'unshakable' idea." *Id*. at 503. According to the expert in *Blohm*, such a belief was psychotic, immovable, and irrational. *Id.* After describing a delusional disorder in much the same way as the expert in *Blohm*, Dr. Bergman opined that petitioner's condition did not rise to the level of a delusional disorder because his beliefs—though sometimes involving faulty reasoning—were not bizarre or illogical. (Doc. No. 7-4 at 475, 496-99.) Of course, the decision in *Blohm* is further distinguished by the fact that it was not a habeas case, but was before the district court for an initial competency determination. While this Court might have come to a contrary conclusion had it been confronted, at first instance, with the facts developed at the competency hearings, it cannot say, on habeas review, that the state courts' decisions involved an *unreasonable* determination of the facts.

[8] With respect to petitioner's perception of the events leading up to the shooting—including his belief that an employee of CWRU hacked into his website for the purpose of sabotaging it—Dr. Bergman testified that his belief was *not* irrational in that there was evidence that his website had been compromised. (Doc. No. 7-4 at 466.).

competency was amply supported by the record. Ultimately, the Court finds that petitioner has failed to show, by clear and convincing evidence, that the state courts' decisions were the result of an unreasonable determination of the facts. Petitioner's second objection is without merit.

*Conclusion*

For the reasons set forth herein, petitioner's objections to the report are overruled. The petition for writ of habeas corpus is DENIED and this case will be DISMISSED with prejudice. Further, the Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. §§ 1915(a)(3), 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: September 14, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**